UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                          :
THOMAS SPIEWACKI,                         :        CASE NO. 1:13-CV-01972
                                          :
              Plaintiff,                  :
                                          :
vs.                                       :        OPINION & ORDER
                                          :        [Resolving Doc. 29]
FORD MOTOR COMPANY-UAW                    :
RETIREMENT BOARD OF                       :
ADMINISTRATION *et al.*,                  :
                                          :
              Defendants.                 :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      In this case, Plaintiff Thomas Spiewacki says that Defendants Ford Motor Company-UAW Retirement Board of Administration, Ford Motor Company UAW Retirement Plan, and Ford Motor Company ("Ford Defendants") induced his retirement by providing him with incorrect benefit estimates and that Defendants now are paying him less than he says he was promised.[1]  He brings claims for promissory and equitable estoppel, negligence by a fiduciary, unjust enrichment, declaratory judgment, and statutory and attorneys' fees.[2]

      The Ford Defendants filed a document entitled "Cross-Motion for Judgment on the Merits."[3]  Plaintiff Spiewacki opposes entry of judgment.[4]

      For the reasons that follow, the Court construes Defendants' motion as a motion for summary judgment and **GRANTS** the motion for summary judgment.

---

[1] Doc. 1.
[2] *Id.*
[3] Doc. 29.
[4] Doc. 34.

Case No. 1:13-CV-01972
Gwin, J.

## I. Procedural Background

On September 6, 2013, Plaintiff Thomas Spiewacki sued Defendants Ford Motor Company-UAW Retirement Board of Administration, Ford Motor Company UAW Retirement Plan, and Ford Motor Company.[5/] He brought six causes of action: promissory and equitable estoppel, negligence by a fiduciary, unjust enrichment, declaratory judgment, and statutory and attorneys' fees.[6/] Plaintiff requested a jury trial.[7/]

On December 19, 2013, the Court held a case management conference and, because the case appeared to have been brought under the Employee Retirement Income Security Act ("ERISA"), established a dispositive briefing schedule and did not set a trial date.[8/] The Court ordered Plaintiff to file a motion for a jury trial if Plaintiff wished to pursue a jury trial.[9/]

On January 31, 2014, the parties filed the stipulated administrative record,[10/] Plaintiff withdrew his jury demand,[11/] and Plaintiff moved to conduct discovery.[12/]

On February 26, 2014, in light of Circuit precedent that allows a plaintiff to bring common law claims against an ERISA plan in limited circumstances, the Court allowed Plaintiff limited discovery into "what statements were made to him, what calculations underlay any estimates given to him, and what calculations support any different benefit calculation."[13/]

---

[5/]Doc. 1.
[6/]*Id.*
[7/]*Id.*
[8/]Doc. 15.
[9/]*Id.*
[10/]Doc. 21.
[11/]Doc. 20.
[12/]Doc. 22.
[13/]Doc. 28 at 3.

Case No. 1:13-CV-01972
Gwin, J.

On April 7, 2014, the Ford Defendants filed their "Cross-Motion for Judgment on the Merits."[14]

On April 28, 2014, Plaintiff filed his brief in opposition to Defendants' motion.

## II. Legal Standard

The parties disagree about with what evidence the Court should review Defendants' motion.

The Ford Defendants rely on *Wilkins v. Baptist Healthcare Systems*[15] for the premise that "Plaintiff must rely exclusively on the Stipulated Administrative Record, and the documents and information obtained through this additional limited discovery, to prove the elements of his individual claims."[16]

Plaintiff, however, says that because of the material outside of the administrative record, the Court should use the summary judgment standard to review the motion.[17]

The Court finds the summary judgment standard is appropriate in this case.  In *Wilkins*, the Court of Appeals directed district courts not to review challenges to "the administrator's ruling" under a summary judgment standard.[18]

However, Plaintiff does not challenge the plan administrator's interpretation of the ERISA plan; instead, he brings common law claims that the plan should be estopped from enforcing the terms of the plan or that the plan has been unjustly enriched.  These claims are not based on the administrative record and may require the Court to consider competing testimony.

---

[14]/Doc. 29.

[15]/150 F.3d 609 (6th Cir. 1998).

[16]/Doc. 29-1 at 10.

[17]/Doc. 34 at 1.

[18]/150 F.3d at 619 (Gilman, J., concurring).  Judge Gilman was joined by Judge Ryan on this issue, rendering Judge Gilman's opinion binding on this issue.

Case No. 1:13-CV-01972
Gwin, J.

The Sixth Circuit in *Sprague v. General Motors Corp.*[19/] reviewed a similar argument concerning estoppel that was decided with summary judgment motions and a bench trial without criticism.[20/]  Although *Sprague* was decided before *Wilkins*, the Court finds that *Sprague* implicitly recognized that summary judgment and a bench trial are still appropriate when the plaintiff does not challenge the administrator's decision based on the interpretation of the plan.  *Wilkins* does not say anything different.[21/]

Accordingly, the Court finds that the correct legal standard to review Defendants' motion is the summary judgment standard.

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22/]  The moving party must demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[23/]  Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[24/]  The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[25/]  But the Court will view the facts and all reasonable inferences from those facts in favor of the non-

---

[19/] 133 F.3d 388 (6th Cir. 1998) (en banc).

[20/] *Id.* at 396.

[21/] *Cf.* 150 F.3d at 619 (Gilman, J., concurring) (recognizing that where the plaintiff makes a "procedural challenge to the administrator's decision" the court can consider evidence outside the administrative record).

[22/] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

[23/] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[24/] *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[25/] *Matsushita*, 575 U.S. at 586.

-4-

Case No. 1:13-CV-01972
Gwin, J.

moving party.[26]

### III. Factual Background

Plaintiff Spiewacki worked at Defendant Ford Motor Company.  On August 9, 2011, Plaintiff's plant was closed, and Spiewacki was laid off.[27]  Under his collective bargaining contract, Plaintiff could either retire or work at a different Ford facility.[28]  Plaintiff requested information about Ford's special early retirement package.[29]

In response to that inquiry, on September 27, 2011, Ford National Employee Services Center sent Plaintiff a packet of information concerning the benefits he was eligible for.[30]

The cover page of the packet said,

> The benefits amount in this package are estimates only and are based on the information you provided and the Company record at the time this package was prepared.  They represent an estimate of the amounts that may be payable at your Benefit Commencement Date (BCD) under the payment methods available.  The actual benefit amounts will depend on such factors as your age, the Company record, pension plan formulas and the payment method you select.  Initially, your benefit payments will be made based on this estimate.  Then, approximately 90 days after your BCD, your benefit will be recalculated to reflect your final employment data and you will receive a *Payment Adjustment Letter* reflecting any changes to your benefit payments.[31]

The packet contained two documents entitled, "Retirement Benefit Statement."  One document said, "This statement provides you with a calculation of the pension benefits you are entitled to receive under the Plan(s) if you commence your benefits on November 1, 2011.  This

---

[26]/*Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2006) (quoting *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997)).

[27]/Doc. 21 at 64.

[28]/Doc. 34-1, Spiewacki Aff. at 2 ¶ 10.

[29]/Doc. 21 at 54.

[30]/*See id.* at 3-27.  The packet is dated September 14, 2011, but the administrative record shows that the packet was sent on September 27.  *Id.* at 54.

[31]/*Id.* at 24.

Case No. 1:13-CV-01972
Gwin, J.

estimate presumes you have continuous employment with the Company until your termination date."[32]

The other document entitled, "Retirement Benefit Statement," contained a "DISCLAIMER," that read,

> Calculations detailed on this statement estimate the pension benefit you may receive upon retirement based on current Plan provisions and the assumptions shown. These calculations are subject to corrections for errors in your record or otherwise. If this estimate differs from your actual benefit, the applicable Plan document will control the final determination concerning your benefit under the Plan. Any information shown as assumptions may vary based on the date you are eligible to retire or the options you have requested.[33]

The packet stated that the benefit for a "Single Life Benefit" would be $2,769.34 per month until April 1, 2018.[34] After April 1, 2018, the benefit would be $1,422.66 per month.[35] These benefits were calculated by a third-party administrator, Xerox HR Solutions.[36]

Plaintiff spoke on the telephone with the Ford National Employee Services Center at least twice after receiving the packet.[37]

On November 1, 2011, Plaintiff retired and, after the death of his wife, selected the "Single Life Benefit" option.[38] Plaintiff says he relied upon the amounts listed in the packet in his decision to retire instead of trying to keep working for Ford.[39] He did not receive a *Payment Adjustment*

---

[32]/*Id.* at 17.
[33]/*Id.* at 16.
[34]/*Id.* at 15.
[35]/*Id.*
[36]/Doc. 29-2, Block Decl. at 1-2 ¶ 3.
[37]/Doc. 21 at 55.
[38]/*Id.*
[39]/Doc. 34-1, Spiewacki Aff. at 1 ¶ 5.

Case No. 1:13-CV-01972
Gwin, J.

*Letter* as promised by the packet.[40]

In May 2012, the plan Board of Administration realized that Xerox mistakenly had calculated Plaintiff's benefit as if he had 26.2 years of credited service with Ford instead of 22.8 years.[41]  No party has explained why Xerox used 26.2 years of credited service instead of 22.8 years of credited service.

Using the correct amount of credited service, Plaintiff's benefit under the plan should have been $2,420.53 per month until April 1, 2018, and $1,243.47 per month afterwards.[42]  The Board told Xerox to only pay the revised amount; because Xerox began paying Plaintiff benefits in June 2012, retroactive to his retirement, Plaintiff has only received the revised amount.[43]

On September 20, 2012, Plaintiff through counsel sent a letter to the Board requesting that the Board increase Plaintiff's benefit payment to the $2,769.34 quoted in the original packet.[44]  The letter included the original packet's benefit table showing $2,769.34 for a "Single Life Benefit" option.[45]

On October 16, 2012, the Board responded to Plaintiff's letters.[46]  The response explained that the Plaintiff's benefits had been correctly calculated based on his years of service and the benefit rates.[47]

On December 13, 2012, Plaintiff appealed the Board's decision under an equitable estoppel

---

[40]/*Id.* at 2 ¶ 9.
[41]/Doc. 29-2, Block Decl. at 2 ¶¶ 4-5.
[42]/*Id.* at 2 ¶ 4.
[43]/*Id.* at 2 ¶ 6.
[44]/Doc. 21 at 41.
[45]/*Id.* at 42-43.
[46]/*Id.* at 46.
[47]/*Id.*

-7-

Case No. 1:13-CV-01972
Gwin, J.

argument.[48/]  On December 21, 2012, Plaintiff also requested a copy of his file and the plan documents.[49/]

On January 30, 2013, at the Board meeting, the Board rejected Plaintiff's appeal.[50/]  On February 12, 2013, the Board sent Plaintiff its decision, Plaintiff's file, and the plan documents.[51/]

## IV. Analysis

### A.    Promissory and Equitable Estoppel

Plaintiff says that Defendants should be estoped from denying him the benefits quoted in the original benefits packet under a promissory estoppel or equitable estoppel theory.[52/]

The Sixth Circuit has described promissory estoppel and equitable estoppel as having the same legal elements in the ERISA common law context.[53/]

To prove an estoppel claim, the plaintiff must show

(1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting estoppel must reasonably or justifiably rely on the representation to his detriment.[54/]

Plaintiff cannot satisfy three of the elements: Defendants' awareness of the true facts,

---

[48/]*Id.* at 33-35.

[49/]*Id.* at 31.  The Board says it received the file on January 2, 2013.  Doc. 29-1 at 9 n.5.  The basis for this statement appears to be a stamp on the request for the file that reads, "Jan 02 2013."  Doc. 21 at 31.

[50/]*Id.* at 61-62.

[51/]*Id.* at 64-65.  The letter is dated February 5, 2013, but the parties agreed to accept for purposes of this case that the letter was mailed on February 12.  Doc. 29-1 at 23 n.8.

[52/]Doc. 1 at 3-5 ¶¶ 16-29.

[53/]*See Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 567-68 (6th Cir. 2013) (discussing the elements of promissory estoppel and quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc) (giving the elements of equitable estoppel)); *see also Haviland*, 730 F.3d at 578 (Stranch, J., concurring in part and dissenting in part) ("In this circuit we treat the theories of promissory estoppel and equitable estoppel interchangeably . . . .").

[54/]*Id.* at 567-68 (quoting *Sprague*, 133 F.3d at 403).

-8-

Case No. 1:13-CV-01972
Gwin, J.

Defendants' intent that Plaintiff act on the representation, and Plaintiff's justifiable reliance. Accordingly, Defendants are entitled to judgment as a matter of law on these claims.

To show that Defendants were aware of the true facts, Plaintiff must either show that their actions contain an element of fraud or they were grossly negligent.[55/] Plaintiff has come forward with no evidence about why Defendants miscalculated Plaintiff's benefits in the initial letter. Instead, Plaintiff simply says, "That the mistake was not made negligently . . . defies logic."[56/] Mistakes can happen despite the exercise of due care. Therefore, Plaintiff has not produced sufficient evidence to create a triable issue on the element of Defendants' awareness that the initial estimated years of service was known to be wrong.

With respect to Defendants' intent, the only evidence that Plaintiff gives is an affidavit from Plaintiff Spiewacki that says he relied on Defendants' skill and knowledge to tell him what benefits he was due if he retired.[57/] The affidavit does not say that Plaintiff believed Defendants wanted Plaintiff to retire.

No evidence exists in the record to show whether the plan and Defendants would have been better off had Plaintiff retired instead of continuing to work.

Accordingly, no genuine dispute exists about whether Defendants intended for their representation of Plaintiff's retirement benefits be acted on, nor whether Plaintiff reasonably believed Defendants wanted him to act on the representation.

Moreover, the record evidence shows that Plaintiff's reliance on the representation was

---

[55/] *Stark v. Mars, Inc.*, 518 F. App'x 477, 481 (6th Cir. 2013) (quoting *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 443 (6th Cir. 2010)).

[56/] Doc. 34 at 16.

[57/] *See* Doc. 34-1, Spiewacki Aff.

-9-

Case No. 1:13-CV-01972
Gwin, J.

unreasonable. The retirement packet Plaintiff received in response to his retirement query three times said that the benefits quoted in the packet were only estimates.

The packet cover letter also said that the final benefits would depend on factors such as "the Company record[ and] pension plan formulas" and that the benefits would be "recalculated to reflect your final employment data" *after* Plaintiff retired.[58]

The document with the benefit calculation also said that the "calculations are subject to corrections for errors in your record or otherwise."[59]

"In light of these disclaimers, plaintiff could not reasonably rely on the estimates being correct."[60]

Plaintiff's reliance on *Bloemker v. Laborers' Local 265 Pension Fund*[61] is incorrect. In *Bloemker*, the defendants sent the plaintiff an estimate of the plaintiff's retirement benefits that included similar disclaimers.[62] Importantly, however, when the *Bloemker* plaintiff retired, defendants paid him the estimated amount for almost two years.[63] The defendants then realized they had misinterpreted the plan in calculating his benefits and told the plaintiff he would receive a lower pension amount from that date and he would have to repay the defendants more than $11,000 for the two years of overpayments.[64]

In this case, the Ford Defendants never paid Spiewacki the estimated amount. Rather, the

---

[58]/Doc. 21 at 24.

[59]/*Id.* at 16.

[60]/*Stark v. Mars, Inc.*, 879 F. Supp. 2d 752, 766 (S.D. Ohio 2012) (citing cases).

[61]/605 F.3d 436 (6th Cir. 2010).

[62]/*Id.* at 439.

[63]/*Id.*

[64]/*Id.*

Case No. 1:13-CV-01972
Gwin, J.

Ford Defendants did what the disclaimers had promised: they recalculated his benefits in accordance with his company records, discovered an error, and corrected it.

Plaintiff also says that the disclaimer is overly broad and that it violates 29 U.S.C. § 1110(a).[65/]  First, the disclaimers do apply in this case.  The disclaimers tell Plaintiff that the estimates will be changed to correct for "errors" in his record.  Therefore, they are not overly broad.

And second, § 1110(a) does not apply to the question of whether a plaintiff may reasonably rely on an estimate.  The disclaimers do not attempt to disclaim liability for breach of fiduciary duty; rather, they tell the recipient that the estimated calculation is not final.  The fact that fiduciary may not disclaim its fiduciary obligations does not mean that a person may rely on a clearly-marked estimate.

No genuine dispute exists about these three elements of the promissory and equitable estoppel claims—awareness of the true facts, intention to induce reliance, and justifiable reliance—and, therefore, Defendants are entitled to judgment as a matter of law on these two causes of action.

**B.      Negligence of a Fiduciary**

Plaintiff says that Defendants negligently breached their fiduciary duties by quoting Plaintiff an incorrect benefit amount.[66/]

"An ERISA fiduciary breaches its duty by making material misrepresentations to a participant, provided that its 'statements or omissions were made negligently or intentionally.'"[67/]

Recall, Plaintiff has produced no evidence concerning why Defendants calculated Plaintiff's

---

[65/]Doc. 34 at 4-6.
[66/]Doc. 1 at 5-6 ¶¶ 30-33.
[67/]*Stark*, 518 F. App'x at 483 (quoting *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)).

-11-

Case No. 1:13-CV-01972
Gwin, J.

benefits incorrectly or that Xerox had repeatedly provided incorrect benefit calculations.[68] Therefore,

Plaintiff has not met his burden of showing a genuine dispute as to whether Defendants acted

negligently or intentionally when it misrepresented his benefit entitlement.

Accordingly, Defendants are entitled to judgment as a matter of law on this breach of

fiduciary duty claim.

**C.      Unjust Enrichment**

Plaintiff says that Defendants have been unjustly enriched because of the misrepresentation.[69]

Because the Court has been unable to find authority on unjust enrichment in this type of

ERISA case, the Court turns to the Third Restatement on Restitution and Unjust Enrichment.

"A person who is unjustly enriched at the expense of another is subject to liability in

restitution."[70]  "Unjustified enrichment is enrichment that lacks an adequate legal basis; it results

from a transaction that the law treats as ineffective to work a conclusive alteration in ownership

rights."[71]

In this case, no ownership rights have been transferred.  Plaintiff's entitlement to the benefits

he seeks is not based on the plan or on any contributions he made to the plan.  The unambiguous plan

terms show that Plaintiff is currently receiving the benefits that his retirement contributions over his

service at Ford entitle him to.  The purported entitlement to additional benefits is premised on

Plaintiff's assertion that he relied to his detriment on the statements in the benefits packet.

Plaintiff's argument on this claim is limited to the conclusory statement that the Court should

---

[68]/*Cf. id.* at 483-84 ("The Committee did not have reason to doubt Hewitt's competence at the time the Committee misrepresented to Stark the value of her benefits plan, because the Committee would not learn of Hewitt's programming error for several months.").

[69]/Doc. 1 at 6 ¶¶ 34-39.

[70]/Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011).

[71]/*Id.* cmt. b.

-12-

Case No. 1:13-CV-01972
Gwin, J.

deny Defendants' motion on this claim.[72/]

Because Plaintiff cannot show a transaction that altered ownership rights, no genuine dispute exists concerning the unjust enrichment claim, and Defendants are entitled to judgment as a matter of law on this cause of action.

**D.  Declaratory Judgment**

Plaintiff also seeks a declaration that his proper benefit amount is $2,769.34 until he turns 62 and $1,422.66 after he turns 62.[73/]

In light of the Court's decisions granting Defendants judgment on Plaintiff's estoppel, fiduciary duty, and unjust enrichment claims, no genuine dispute as to a material fact exists on this claim, and Defendants are entitled to judgment as a matter of law on this cause of action.

**E.  Statutory Damages**

Finally, Plaintiff seeks statutory damages under 29 U.S.C. § 1132(c)(1) of $100 per day due to the Board's failure to provide his file and the plan documents within thirty days.[74/]

Section 1132(c)(1) provides that:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.[75/]

No genuine dispute exists about the facts that underlie this claim, and Defendants are entitled

---

[72/]Doc. 34 at 16.

[73/]Doc. 1 at 7 ¶¶ 40-42.

[74/]*Id.* at 7-8 ¶¶ 43-49.

[75/]29 U.S.C. § 1132(c)(1).

Case No. 1:13-CV-01972
Gwin, J.

to judgment as a matter of law.

Section 1132(c)(1) leaves determination of statutory damages to the discretion of the court.[76] When deciding whether a penalty is appropriate, courts often look for evidence of bad faith or resulting prejudice.[77]

The administrator[78] did not act in bad faith, and Plaintiff was not prejudiced by the delay in this case.

Plaintiff requested the documents on December 21, 2012.  The requested materials were mailed out in full on February 12, 2013.  The administrator did not "fail or refuse" to furnish the requested material.  Defendants notified Plaintiff that his appeal was being considered and they would send his complete file when the appeal was final.  Additionally, Plaintiff mailed the request during the holiday season.

Furthermore, Plaintiff was not prejudiced by this minor delay. He alleges that this delay prejudiced him because he had less time to review the documents to research his claim.[79]  But, by this point, he had already exhausted the administrative appeals process. He also had ample time to review his complete file before filing this instant action.

Accordingly, Defendants are entitled to judgment as a matter of law because the Court finds that damages are not appropriate in this case.

### V. Conclusion

For the reasons above, the Court **GRANTS** Defendants' motion for summary judgment.  The

---

[76]/*See id.*

[77]/*See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994).

[78]/The Court need not reach Defendants' argument that Plaintiff's claim fails due to his failure to assert his claim against the proper Defendant because the Court would deny damages anyway.

[79]/*See* Doc. 34 at 16.

Case No. 1:13-CV-01972
Gwin, J.

Court enters judgment on Plaintiff's claims in favor of Defendants.

      IT IS SO ORDERED.


Dated: May 1, 2014                     s/       *James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE